THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND STATE HIGHWAY COMMISSION, RESPONDENTS.

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND STATE HIGHWAY COMMISSION, RESPONDENTS.

STATE HIGHWAY COMMISSION, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, RESPONDENTS.

Argued October 7, 1932—Decided January 26, 1934.

Before Justices PARKER, LLOYD and HEHER.

For the Central Railroad Company, *William A. Barkalow, George S. Hobart* and *Charles E. Miller.*

For the state highway commission, *William A. Stevens,* attorney-general, *Walter H. Bacon, Jr.,* and *Maximilian M. Stallman.*

For the board of public utility commissioners, *John A. Bernhard.*

The opinion of the court was delivered by

LLOYD, J. The state highway commission presented petitions to the board of public utility commissioners praying orders from that body approving the construction of certain proposed crossings of the Central Railroad Company on routes 30 and 31 of the state highway system, first setting forth that efforts had been made to come to an understanding with the railroad company without success.

The board found in a general way that the proposed crossings were not required by traffic conditions or in consideration of public safety. It concluded, however, that the legislature had vested the execution of the state's highway policy as to railroad crossings in the highway commission and by chapter 88 of the laws of 1929, page 138, had imposed upon railroad companies the obligation to co-operate with the commission in the prompt execution of the work, and for that reason declined to act further either on the petitions, or on counter prayers of the railroad company.

Our examination of the proofs in the cases leads us to the same conclusions as those reached by the board on the question of fact. Both parties, however, to the litigation insist that the board took too narrow a view of the authority conferred upon it by the laws of the state and urge findings and direction in favor of their respective contentions on the merits.

We agree with the view that the board was vested with ample authority to deal with the situation as presented. It

has been the uniform policy of the state to commit to that body the various questions arising respecting the railroad crossings of public highways. In 1923 it was stated by Mr. Justice Parker, in the case of *Atlantic City Railroad* v. *Pleasantville*, 99 *N. J. L.* 328; *affirmed* (*Court of Errors and Appeals*), 100 *N. J. L.* 394, "that by a course of legislation beginning in 1911 and continued to the [then] present time the supervision and regulation of railroad crossings throughout the state have been substantially turned over to the public utility commission," subject of course to the power of this court to review on *certiorari*. The contention that the act of 1929, chapter 88, contemplates a modification of this power does not appeal to us. In its relevant sections it provides:

Section 2. It shall be the duty of the state highway commission to furnish the annual program to every company owning or operating a railroad in this state which is called upon to perform work under the annual program and it shall be the duty of every such railroad company to co-operate with the state highway commission in the prompt execution and completion of the work.

Section 3. The cost of the work shall be borne by the state and the railroad company involved in equal shares, and it shall be lawful for the state highway commission and any railroad company to enter into any agreement covering the work in the annual program on the basis of equal division of the cost.

Section 7. Any dispute arising hereunder may be submitted to the board of public utility commissioners, which is hereby authorized to determine the same, and its determination shall be final and conclusive, subject, however, to review, as now provided by law, by the courts of the state.

We think it quite apparent that it was not the intention of the legislature, acting under its police power, to create absolute authority in the highway commission in the development of its highways; to use its own untrammeled judgment in the construction or alteration of the state highways where they intersect the railroad lines of the state and automatically thereby impose on the railroads half of the cost of the im-

provement, or to limit the supervisory authority previously reposed in the board.

Section 7 clearly contemplates that before such construction can be undertaken there must be either an accord between the highway commission and the railroad company as to the plans and cost, or, on appeal to that body, a determination by the board of utility commissioners. The highway commission was, therefore, quite right in presenting its petitions to that body for its approval, and the board was quite within its powers when it passed upon the merits of the controversy thus presented.

As has already been stated, our conclusion on the merits is in accord with the action of the board. Neither the requirement of public safety nor of public travel justifies the changes planned by the highway commission, and particularly at this time, when, as we may well judicially notice, so many railroads of the country like other business concerns are having difficulty under the depressed state of industry in maintaining themselves with the burdens already imposed upon them.

So much of the orders of the state board as passed upon the facts involved in the petitions are approved and confirmed, and the board is directed to issue its orders in accordance therewith.

(Dissenting opinion by Mr. Justice Heher will be found on page 559.)